**Christie-Street Commission Co. v. Board of Trade and Western U. T. Co.**

1. EQUITY—*Will Not Aid an Illegal Business.*—A court of chancery will not lend its aid to a complainant to carry on an enterprise prohibited by law.

2. SAME—*Restraint of Offenses When Incidental.*—Where the inter-

vention of a court of equity is warranted by the necessity of protection to property interests, the mere fact that incidental thereto a statutory offense must be enjoined, will not deprive the court of its jurisdiction.

3. Board of Trade—*Quotations Impressed with a Public Interest.*—It is established that the quotations of the Board of Trade are impressed with a public interest.

**Bill for an Injunction.**—Appeal from the Circuit Court of Cook County; the Hon. Murray F. Tuley, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed March 14, 1901.

**Statement.**—The particulars of the controversies in this cause and the pleadings are presented in the statement of facts in the decision of Christie-Street Commission Company v. Board of Trade, 92 Ill. App. 604. The appeal there was from an interlocutory order of injunction entered in this cause, and while the precise questions of law here involved were not considered in that appeal, yet the contentions of the litigants and their pleadings were there briefly set forth. The branch of the controversy now presented arises upon the original bill of complaint of the appellant against the appellees, alleging, in effect, the right of appellant to receive the market quotations of the Board of Trade, appellee, distributed by the telegraph company, appellee, which service the appellees threatened to discontinue, and praying for relief by way of injunction to restrain appellees from depriving appellant of such service. The bill alleged that appellant was engaged in a lawful business, that its business "is and always has been a legitimate business," and has been conducted as such for the last three years. The answer of appellees, denying that the business of the appellant is a legitimate business, and averring that on the contrary its sole and only business is bucket-shopping, or gambling in margins, and denying its right to the quotations of appellee, the Board of Trade, for such use, presented the issue which was disposed of by the decree now to be reviewed.

A. B. Jenks, attorney for appellant.

HENRY S. ROBBINS, attorney for appellees.

MR. JUSTICE SEARS delivered the opinion of the court.

The question of fact to be determined upon this appeal is as to whether the evidence supports the conclusion of the chancellor that the business in which appellant was engaged and for which it sought the use of the quotations of appellee, the Board of Trade, was a legitimate business, as alleged by its bill of complaint, or was an illegal business, prohibited by the statutes of the State of Illinois and the State of Missouri, where appellant was engaged in business, as averred by the answer of appellees. There is also to be considered the question of law as to whether, if the business of appellant is not legitimate, as alleged by it, but is illegal, as averred by appellees, a court of equity will intervene to assist appellant in obtaining the quotations in question for such illegal use.

As stated, upon a review of the same evidence in Christie-Street Commission Co. v. Board of Trade, *supra*, " We regard the evidence as sufficient to warrant the conclusion of the chancellor that appellant was in fact using the quotations in the illegal business of bucket-shopping." The statute of this State, which prohibits the carrying on of bucket shops for the purpose of gambling by betting on future prices of grain, stocks. etc., describes the offense in part as follows : as the keeping of " any bucket-shop, office, store or other place, wherein is conducted or permitted the pretended buying or selling of the shares of stocks or bonds of any corporation, or petroleum, cotton, grain, provisions or other produce, either on margins or otherwise, without any intention of receiving and paying for the property so bought, or of delivering the property so sold; or wherein is conducted or permitted the pretended buying or selling of such property on margins; or when the party buying any of such property, or offering to buy the same, does not intend actually to receive the same if purchased, or to deliver the same if sold." Criminal Code, Chap. 38, Sec. 137a, R. S.

232    APPELLATE COURTS OF ILLINOIS.

VOL. 94.] Christie-Street Com. Co. v. Board of Trade & W. U. T. Co.

Of this statute the Supreme Court has said :

" It is apparent from the whole act, from the title to the concluding sentence, that the purpose and object of the legislature was to suppress the evil of gambling in produce. * * * The shifts and devices so easily and frequently resorted to for the purpose of giving to transactions tainted with gambling the semblance of legitimate deals, were sufficient considerations, in the legislative judgment, to require, as a matter of public policy, that all places wherein is conducted or permitted the pretended buying or selling of property such as is specified in the act, on margins or otherwise, shall be prohibited." Soby v. The People, 134 Ill. 66.

The statutes of the State of Missouri, where appellant is engaged in its business, contains similar provision.

The cause standing upon bill, answer and replication, as well as upon cross-bill of appellee, the Board of Trade, the chancellor referred it to a master in chancery to take evidence upon the issue " whether or not the Christie-Street Commission Company, at the time of and prior to the filing of the original bill herein, was or is conducting a bucket-shop, and in connection therewith is using the public market quotations of the Board of Trade of the city of Chicago, furnished by the Western Union Telegraph Company, as averred in the answer and cross-bill of the Board of Trade." The master, after taking a large amount of testimony at Kansas City in the form of depositions, reported the evidence to the court. Upon consideration of the matters contained in the report and the statutes of the State of Missouri, which were offered, the chancellor entered a decree finding in substance that the Christie-Street Commission Company, at the time of filing the original bill, was and still is conducting a bucket-shop in the city of Kansas City, Missouri, and in such business is using the market quotations of prices on the Board of Trade of the city of Chicago (which are furnished the said Christie-Street Commission Company by the Western Union Telegraph Company) as a basis for making with divers persons, in the course of its business, bets upon the fluctuations of prices of commodities in transactions upon said Board of

Trade, and that in said transactions neither party thereto contemplates or intends the actual delivery of the commodity dealt in, and that such transactions or bets, as conducted or made by the Christie-Street Commission Company as aforesaid, are prohibited by the criminal law of the State of Missouri, as well as by the criminal law of the State of Illinois. The chancellor ordered that the temporary injunction granted upon the original bill be dissolved, and as the bill prayed only for injunction, ordered that the same be dismissed for want of equity.

It would unnecessarily lengthen this opinion and to no good purpose, to recite the substance of the evidence sustaining the decree. The record of the evidence is very voluminous, consisting of nearly 500 pages. It presents testimony of witnesses connected with and familiar with the business transacted by appellant—among them employes of appellant. We refer only to portions of this testimony.

It appears that the Western Union Telegraph Company had a wire running from the wheat pit of the Board of Trade in Chicago to the telegraph company's office in Kansas City. From the telegraph office in Kansas City a wire ran to the office of appellant, from which a telegraph operator, in the employ of appellant, received the messages in appellant's office. Over these wires the quotations of prices in the Board of Trade in Chicago were sent continuously to appellant's office during the market hours of the day.

Upon a blackboard in appellant's office an employe wrote the quotations as received. In front of the blackboard chairs were arranged for use of appellant's customers. The customer who desired to deal with appellant gave his order to buy or sell to an order clerk. After an order had thus been given to and received by appellant, the course of the business which followed upon such transaction is related by witnesses who were in the employ of appellant. Mason, a clerk of appellant, testified:

" I have to do with the closing of trades of the character represented by this memorandum. If a person wants to close a trade we agree on some price to cancel it. I am the one that does that. If a customer wants to close a pur-

234    APPELLATE COURTS OF ILLINOIS.

VOL. 94.]  Christie-Street Com. Co. v. Board of Trade & W. U. T. Co.

chase, he would step up to me at the counter and signify' his desire. I would look at the last quotation on the blackboard for the article, and from that derive a closing price. It requires the agreement of myself and the customer to close a trade at that price. I do not know of any transactions where I closed at any different price than the last quotation on the blackboard. A transaction is closed when the party desires to close out by the last quotation on the blackboard, if I am satisfied to make a trade at that price. It is optional with me whether I will close the trade or not. There is nothing obligatory on us to take a trade off his hands. Strictly speaking, when a man gets in on a deal, he can not get out without our consent. I never exercised the right to refuse to close a trade at the price of the last quotation on the blackboard when I thought it was a fair proposition, but frequently do where I think it is not. * * * In a great majority of cases I take the closing price from the blackboard and base my closing price on it. If the quotation is fresh on the blackboard, I always close with the customer at the last price on the blackboard. * * * Closing is based upon an agreement made right at the time. We take the price on the blackboard as a basis for all our transactions, but the price at which we close is a price agreed upon between me and the other party. The market price on the board is the basis of our agreement to close. * * * When we agree on closing a transaction, the price for closing is obtained the same as the price for opening. We generally take the last quotation on the blackboard, or, if it is an old one, wait for a fresh one."

As to any of the transactions of appellant in which the quotations in question were used having been carried out as genuine sales by delivery, the testimony sustaining the decree is in part as follows:

Tice, a margin clerk of appellant, testified:

" I have been in the employ of the Christie Company for several years, and do not recall a single instance when the second entry was not made in one of two of these ways— either by stop order or a telegram—and during all that time I keep the trade that has a number on my sheet and carry it forward until I get a counter trade. During the time I have been employed with the Christie Company I could not say that there has been any actual delivery of property upon the trade entered upon the margin sheets. I know of none. I can not recall that there has been one."

Richardson, also a margin clerk, testified :

" No actual property passes where the transactions are closed by exhaust or order.    I never knew of any property actually passing when a trade was closed with a stop order or closing order.    All transactions are closed by one of two ways, or delivery when the delivery time comes.    The bulk of the trade is closed by exhaust of the margin or by closing order.    I do not know of any order to buy or order to sell during the last six months that has not been closed out in either of these two ways.    I would know of it if it had been.    Either Tice or I would have known of it.    I can not remember a transaction that was closed except in those two ways, and I don't recall one this year.    I guess most of the transactions under my jurisdiction have been closed either by order or exhaust.    I can not say whether all of them have.    It might be, but I would not be positive.    I do not recall any trades that were actually delivered."

Tinker, appellant's bookkeeper, testified :

" I don't know of any entry of any delivery of grain or provisions in their books.    I mean by that, delivery with the Christie Company or delivery by them of any grain or commodity dealt in on the Board of Trade.    If any delivery had been made, I would know of it.    It would necessarily appear in some way in the books."

This witness had been engaged in appellant's business ever since it was started.

It is sufficient to say of this evidence and the other evidence in the record, that it not only establishes the finding of the chancellor that appellant was engaged in the prohibited business of bucket-shopping, and was using the quotations in question for such purpose, but it establishes more than that, viz., that the quotations were not used nor sought for any other substantial purpose.    If the evidence warranted no further conclusion of fact than that presented by the findings of the decree, the question might be fairly raised, as counsel seek to raise it, as to the propriety of a decree which denied to appellant protection of a legitimate use, to which appellant was entitled, merely because appellant was also making another and an illegal use of the quotations.    But this question is not necessary to be considered; for it is enough if the evidence in the record sustains the

236    APPELLATE COURTS OF ILLINOIS.

VOL. 94.] Christie-Street Com. Co. v. Board of Trade & W. U. T. Co.

order of the decree, irrespective of whether the findings of fact by the chancellor are sufficient. There is no finding of fact which is inconsistent with the relief granted. The findings might, upon the evidence, as well have gone to the extent of a conclusion that appellant was using the quotations for no substantial business purpose save gambling.

If it could be said that there appeared to have been a use, slight and comparatively insignificant in extent, for purposes other than gambling, still the conclusion would be unaffected that the regular and substantial business of appellant, for which the quotations were sought, was an illegal business. In a court of equity the pretext could not be permitted to hide the substance.

Nor is it important what other business, legal or illegal, appellant may have conducted, with which these quotations have no relevancy. The question is as to the business in which the quotations were used, and for the carrying on of which they are sought by the relief prayed.

The bill of complaint of appellant alleges that its business, to maintain which the intervention of a court of equity is invoked, is and has been a legitimate business. The evidence discloses the falsity of the allegation. This issue, presented by bill, answer and replication, is clearly determined by the evidence against appellant.

But aside from any question of pleading, we are of opinion that when it appeared to the chancellor that the aid of the court was sought to enable the complainant, appellant, to carry on an enterprise which was prohibited by the law, the chancellor could not do otherwise than deny the prayer. If it is not within the scope of chancery jurisdiction to punish or prevent crimes at the instance of private suitors, it is surely quite as far removed from the scope of equity to assist the law-breaker in his violation of the statute.

Nor does this position of the court depend alone upon an application of the doctrine of "clean hands in equity," which, strictly construed, may apply only to such instances of wrong, fraud or illegality as affect the interests of the adverse litigant. Here it is not the right of appellee which

prevails, but rather the refusal of the court of equity to intervene to aid an unlawful undertaking. And authority, directly in point, that the case presented falls within the rule announced, is found in Smith v. The Western Union Tel. Co., 84 Ky. 664.

It is established that the quotations of the Board of Trade are impressed with a public interest. The N. Y., C. G. & S. Exchange v. The Board of Trade, 127 Ill. 153.

But it does not therefrom follow that a court of equity will lend its aid to a criminal enterprise by compelling the Board of Trade to furnish the quotations for such a use.

In the case last cited the court, speaking of the obligation upon the Board of Trade to furnish the quotations fairly, if at all, and without unjust discrimination, said:

"It must do so without unjust discrimination as to persons, and must furnish market quotations to all who may desire to obtain them *for lawful purposes*, and upon the same terms."

The allegations of the bill of complaint are not sustained by the evidence, and the evidence warrants no relief in equity. Therefore the learned chancellor properly dismissed the bill for want of equity.

The decree is affirmed.